**Ronald S. STERN, Plaintiff–Appellant,**

v.

**The COUNTY COURT IN and For the COUNTY OF GRAND and Judge Scotty P. Krob, Defendants–Appellees.**

No. 87SA354.

Supreme Court of Colorado,
En Banc.

May 22, 1989.

Ronald S. Stern, Granby, pro se.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Neil L. Tillquist, Asst. Atty. Gen., Denver, for defendants-appellees.

ROVIRA, Justice.

The question presented in this case is whether the trial court abused its discretion by appointing an attorney with limited experience in criminal matters to represent a criminal defendant. We conclude that the trial court did not abuse its discretion. Accordingly, we affirm.

I.

Appellant, Ronald S. Stern, has been a licensed attorney in the State of Colorado since 1974. Stern practices law in Grand County, Colorado, a rural community with a relatively small population. A limited number of attorneys practice law in Grand County, and only two or three of them routinely practice criminal law. Stern's practice includes civil litigation, but he has limited experience in trying criminal cases.

In December 1986, Stern was appointed by Judge Scotty P. Krob of the County Court in and for the County of Grand to represent an indigent criminal defendant charged with second degree assault, a class 4 felony, and two misdemeanors. The Colorado Public Defender was unable to represent the defendant because of a conflict of interest.

Shortly thereafter, Stern moved to withdraw, contending that he was incompetent to represent the defendant and was prevented from doing so by C.P.R. DR6–101(A). Stern asserted that he was incompetent because he had not voluntarily represented a criminal defendant for eleven years and had "read no cases, rules, or other materials having to do with criminal law or procedure in the same period of time." He also alleged that undertaking the representation would "constitute legal malpractice and would not constitute effective assistance of counsel as required by the Sixth Amendment to the Constitution of the United States." The county court denied Stern's motion, stating: "Having received the motion it is hereby denied. The Court would refer counsel to those rules

regarding association of co-counsel, if necessary."

Stern then commenced an action in district court pursuant to C.R.C.P. 106. In his complaint, he restated his reasons for seeking leave to withdraw and sought an order requiring the county court to grant his motion to withdraw. After considering the answer and affidavit of Judge Krob [1] submitted by the attorney general and briefs submitted by both parties, the district court dismissed Stern's complaint. In its order, the district court ruled:

> Upon review of the pleadings filed herein the plaintiff's request for judgment on the pleadings will be granted and this Court will rule on this matter based on the pleadings and judicial notice of the Plaintiff's considerable competence in those areas of the civil law in which this Court sees the plaintiff on a regular basis....

> As noted in the memorandum filed by the Defendant on 2–17–87 the case law has recognized the obligation of the lawyer to educate himself and certainly this plaintiff is very capable of accomplishing that task. Based on the law cited by Defendant, the Plaintiff's complaint is dismissed.

Stern appealed to the court of appeals, but the county court requested that the case be certified to this court pursuant to section 13–4–109, 6A C.R.S. (1987), and C.A.R. 50. On September 9, 1987, we accepted jurisdiction.[2]

## II.

In *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the United States Supreme Court held that the sixth amendment's guarantee of counsel is a fundamental right "made obligatory upon the States by the Fourteenth Amendment," and therefore the fourteenth amendment requires appointment of counsel for indigent defendants in state court. In *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the Court held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Id.* at 37, 92 S.Ct. at 2012 (footnote omitted). Consequently, an attorney must be provided to represent indigent defendants accused of crimes if imprisonment is to be imposed.

In Colorado, the state public defender is charged with the responsibility of representing indigent defendants. When the public defender cannot represent an indigent defendant because of a conflict of interest, the burden of representation must be placed elsewhere. In Grand County, the county court has placed this burden on the private bar.

A trial court's power to appoint counsel to represent an indigent defendant "can not be questioned. Attorneys are officers of the court, and are bound to render service when required by such an appointment." *Powell v. Alabama,* 287 U.S. 45, 73, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932).

---

**1.** The affidavit of Judge Krob provides:

Having been first duly sworn, Affiant states as follows:

1. I am the County Court Judge for Grand County, Colorado.

2. As County Court Judge I make virtually all appointments of counsel in criminal matters in this county.

3. There are only two or three attorneys in Grand County, Colorado who practice criminal law on a regular basis.

4. To appoint all criminal cases which the public defender cannot handle to the two or three private attorneys who regularly practice criminal law would place an unreasonable burden on those two or three private attorneys.

5. In consideration of these circumstances, it has been the consistent policy of the undersigned to appoint *all* counsel who have offices in Grand County and are actively engaged in the practice of law.

6. The Affiant makes every reasonable effort to appoint the more difficult or involved criminal cases to those two or three attorneys who actively engage in a criminal law practice.

Dated this 11th day of February, 1987.

Signed: Scotty P. Krob
Grand County Court Judge

**2.** Substitute counsel has been appointed in the criminal case to which Stern was appointed. However, we choose to address the issue raised in this appeal because of the likelihood of its reoccurence.

"The professional obligation to respond to the call of the court is an incident of the privilege to practice law, and does not offend constitutional commands." *Daines v. Markoff,* 92 Nev. 582, 555 P.2d 490, 493 (1976); *see also Branch v. Cole,* 686 F.2d 264, 266–67 (5th Cir.1982); *State ex rel. Wolff v. Ruddy,* 617 S.W.2d 64, 65 (Mo. 1981); *Smith v. State,* 118 N.H. 764, 394 A.2d 834, 837 (1978).

The Ethical Considerations of the Code of Professional Responsibility, which represent the objectives toward which an attorney should strive, describe the responsibility of the profession to the community:

> Historically, the need for legal services of those unable to pay reasonable fees has been met in part by lawyers who donated their services or accepted court appointments on behalf of such individuals. The basic responsibility for providing legal services for those unable to pay ultimately rests upon the individual lawyer, and personal involvement in the problems of the disadvantaged can be one of the most rewarding experiences in the life of a lawyer. Every lawyer, regardless of professional prominence or professional workload, should find time to participate in serving the disadvantaged. The rendition of free legal services to those unable to pay reasonable fees continues to be an obligation of each lawyer....

C.P.R. EC2–25.

The American Bar Association Standards for Criminal Justice (Standards) have offered a solution to the problem of finding counsel to represent indigent criminal defendants. The Standards suggest that "[t]he legal representation plan for each jurisdiction should provide for the services of a full-time defender organization and coordinated assigned-counsel system involving substantial participation of the private bar." Standards for Criminal Justice § 5–1.2 (1986).

According to the Standards, the purposes of a "mixed" system include the following: the contribution of private attorneys to the knowledge of public defenders; the existence of a "safety valve" that prevents the caseload pressures on each group from becoming overly burdensome; the assurance that private attorneys will have a continued interest in the welfare of the criminal justice system; and the fact that private attorneys are "essential if full-time defenders are to avoid conflicts of interest in representing codefendants." Standards for Criminal Justice § 5–1.2 commentary at 10 (1986). Although the responsibility for providing "legal representation is shared by the bar with society as a whole," "the bar should play a major role in ensuring the provision of legal representation." Standards for Criminal Justice § 5–1.1 commentary at 7 (1986).

The Standards also recommend a standard for an attorney's eligibility to serve as appointed counsel:

> Assignments should be distributed as widely as possible among the qualified members of the bar. Every lawyer licensed to practice law in the jurisdiction, experienced and active in trial practice, and familiar with the practice and procedure of the criminal courts should be included in the roster of attorneys from which assignments are made.

Standards for Criminal Justice § 5–2.2 (1986). The comments to this standard provide:

> [T]he standard rejects the notion that every member of the bar admitted to practice in a jurisdiction should be required to provide representation. The practice of criminal law has become highly specialized in recent years, and only lawyers experienced in trial practice, with an interest in and knowledge of criminal law and procedure, can properly be expected to serve as assigned counsel. While it is imperative that assigned counsel possess advocacy skills so that prompt and wise reactions to the exigencies of a trial may be expected, this alone is not deemed sufficient. There must also be familiarity with the practice and procedure of the criminal courts and knowledge in the art of criminal defense.
>
> It is critical, however, that the assigned-counsel system be administered in a manner that attracts participation from

the largest possible cross-section of members of the bar and affords opportunities for inexperienced lawyers to become qualified for assigned cases. Accordingly, those responsible for administering assigned-counsel programs should continuously canvass the bar to make certain that all who display a willingness to serve are permitted to do so.... Where interested attorneys lack sufficient experience and skill in criminal defense, there are a variety of procedures that can help them qualify for assigned cases.

Standards for Criminal Justice § 5–2.2 commentary at 27–28 (1986) (footnotes omitted).

Finally, with respect to the function of defense counsel, the Standards have described the "Trial lawyer's duty to administration of justice" as follows:

(a) The bar should encourage through every available means the widest possible participation in the defense of criminal cases by experienced trial lawyers. Lawyers active in general trial practice should be .encouraged to qualify themselves for participation in criminal cases both by formal training and through experience as associate counsel.

(b) All qualified trial lawyers should stand ready to undertake the defense of an accused regardless of public hostility toward the accused or personal distaste for the offense charged or the person of the defendant.

(c) Qualified trial lawyers should not assert or announce a general unwillingness to appear in criminal cases.

Standards for Criminal Justice § 4–1.5 (1986). The comments to Standard 4–1.5 provide:

Wide participation in the defense of criminal cases is important to the health of the administration of criminal justice and to the fulfillment of the bar's obligation to ensure the availability of qualified counsel to every accused. However, lawyers and judges are unanimous in acknowledging that not every lawyer licensed to practice is actually able to try a case in court effectively. Though only a fraction of all criminal cases go to trial, the judgment and experience of a trial lawyer are also essential in the process of negotiation leading to a disposition without trial. But the nature of a trial lawyer's experience in civil trial practice is such as to qualify the lawyer for participation in criminal practice if additional training and experience in criminal law and procedure is acquired. Such training is, of course, available through the large number of continuing legal education programs sponsored by state and local bars and by private organizations. "On the job" experience can be appropriately gained by assigning lawyers with little or no criminal trial experience to act as associate counsel to lawyers who are more experienced in the criminal courts.

By encouraging the significant number of lawyers who are now active only in the civil courts to obtain training and experience in criminal practice, and to make themselves available and willing to undertake the defense of criminal cases, the bar will take a significant step toward making certain that competent counsel is provided. At the same time, the participation in the criminal justice system of lawyers whose practice is largely in the civil courts will help avert the undesirable professional isolation of criminal trial specialists. The civil lawyer's familiarity and acquaintance with the procedures and problems of the administration of criminal justice may also encourage the lawyer to play a larger role in the reform and improvement of the criminal law and its processes.

The highest tradition of the American bar is found in the obligation, in the lawyer's oath, never to reject "from any consideration personal to myself, the cause of the defenseless or oppressed." A lawyer has the duty to provide legal assistance "even to the most unpopular defendants." ... The sure way to guarantee adherence to this tradition of denying no defendant competent legal representation is for all trial lawyers to prepare themselves to act in criminal cases.

Standards for Criminal Justice § 4–1.5 commentary at 19–21 (1986) (footnotes omitted).

With these considerations in mind, we address the arguments presented in this case.

## A.

Stern argues that he is incompetent to handle criminal cases; therefore, he is prohibited from representing the defendant in this case by C.P.R. DR6–101(A)(1).[3] C.P.R. DR6–101(A)(1) provides: "A lawyer shall not: (1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it."

The Alaska Supreme Court has addressed this argument in *Wood v. Superior Court*, 690 P.2d 1225 (Alaska 1984), and *DeLisio v. Alaska Superior Court*, 740 P.2d 437 (Alaska 1987). In *Wood*, an attorney who had not handled a criminal case for approximately eleven years was appointed to represent a criminal defendant. The attorney refused to accept the appointment, and the trial judge found him in contempt. The attorney appealed, arguing, among other things, that he was not competent in criminal matters and that he could not provide effective assistance of counsel.

On appeal, the court said that, although not all attorneys are competent in criminal law, lack of experience in criminal cases will not always justify an attorney's refusal to represent an indigent criminal defendant. *Wood*, 690 P.2d at 1230.

[I]t is all too obvious that 'in some instances an appointed lawyer who prepares diligently will nevertheless be unable to prepare himself sufficiently to be competent to represent the defendant,' and that in those instances the appointed lawyer should not bear primary responsibility for the case. The American Bar Association's Committee on Ethics and Professional Responsibility suggests that attorneys finding themselves in this situation should ask the court to appoint, 'as associate or co-counsel, an additional lawyer who is competent to handle the matter in question.'

*Id.* at 1230 (quoting ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1216 (1972)) (citations omitted).

The court rejected the argument that an attorney's statement that he or she is incompetent automatically excuses the attorney from providing representation and concluded that "[a] showing that an attorney is not competent must be made to the court." *Id.* at 1232. With respect to the attorney who appealed in that case, the court held:

[The attorney] himself stated that he had handled some criminal cases until 1973. [The trial judge] pointed out that in working for the Court System as a law clerk [the attorney] had dealt with criminal matters. On this record we cannot say that he was not competent to practice criminal law or that indigent defendants represented by him would necessarily have received ineffective assistance of counsel.

*Id.*

In *DeLisio*, 740 P.2d 437 (Alaska 1987), the Alaska Supreme Court was again faced with the argument, made by an attorney who was appointed to represent an indigent defendant, that he was incompetent to handle a criminal case. The court quickly disposed of this argument, stating:

[W]e reject [the attorney's] contention that he is incompetent to represent a criminal defendant. At the contempt hearing before [the trial judge, the attorney] stated that he had not handled a criminal case of any magnitude for at least fifteen years. He acknowledged, however, that he had served as a court-

---

**3.** Stern does not dispute the amount of compensation paid to appointed counsel pursuant to the fee guidelines in the regulations concerning the appointment of counsel published by the chief justice. *See* Office of the Chief Justice, Supreme Court of Colorado, *Appointment of Attorneys to Represent Indigents,* Directive 85–24 (1986). In fact, Stern has represented indigent clients in other appointed cases which did not involve criminal matters without challenging the appointment. Therefore, no just compensation argument is raised in this case.

appointed criminal defense attorney from 1962 to 1963, had worked as a prosecutor for a year and a half, and had handled occasional criminal appointments between 1965 and 1967 or 1968. While criminal practice and procedure ha[ve] undoubtedly changed since [the attorney] was active in the criminal bar, the assertion that an attorney with [his] trial experience is unable to provide adequate representation is at best disingenuous and need not be seriously considered.

*DeLisio,* 740 P.2d at 438 (footnote omitted).

■ We believe that when an attorney who is appointed to represent a criminal defendant believes that he is incompetent to handle the case, he has the burden of proving his incompetence to the court. If the attorney carries this burden, the trial court must decide whether the attorney is capable of becoming competent on his own or whether the appointment of co-counsel is necessary until such time as the attorney becomes competent.

■ Here, Stern made no sufficient showing that he is incompetent beyond merely asserting that this is true. In addition, we note that if Stern had met his burden of showing that he is incompetent, the district court believed that he is "very capable of accomplishing th[e] task [of becoming competent]." Accordingly, we believe that the trial court did not abuse its discretion in appointing Stern.

### B.

■ Stern also argues that he cannot provide effective assistance of counsel as required by the United States and Colorado Constitutions. U.S. Const. amends. VI & XIV; Colo. Const. art. II, § 16. Therefore, according to Stern, he should be allowed to withdraw. We reject Stern's argument because it is premature to assert ineffective assistance of counsel before representation has occurred.

In *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the trial court appointed a young lawyer with a real estate practice to represent a criminal defendant indicted on mail fraud charges involving the transfer of over $9,400,000 in checks. The court allowed the attorney only 25 days for pretrial preparation, even though it had taken the government over four and one-half years to investigate the case and it had reviewed thousands of documents during that investigation.

After being convicted on 11 of the 13 counts in the indictment, the defendant appealed, arguing that he received ineffective assistance of counsel in violation of the sixth amendment. The Supreme Court disagreed, holding that the defendant "can therefore make out a claim of ineffective assistance only by pointing to specific errors made by trial counsel." *Id.* at 666, 104 S.Ct. at 2050 (footnote omitted). Applying this standard to the facts of this case, it is clear that Stern's claim that he cannot provide effective assistance of counsel is premature because he has provided no representation and a claim of ineffective assistance of counsel can only be asserted by pointing to specific errors made by trial counsel after representation has occurred.

We addressed a similar argument in *People v. District Court,* 761 P.2d 206 (Colo. 1988). In *District Court,* an attorney, who was appointed to represent an indigent defendant in a criminal case, filed a motion to withdraw and a motion to dismiss the charges against the defendant based on the limitation on fees payable to court-appointed counsel for indigent defendants. The attorney argued, and the district court agreed, that the limitation on the total fee he could be paid for representing an indigent defendant violated the defendant's right to effective assistance of counsel. This court reversed, concluding:

The district court's dismissal of the charges on the basis of a prospective denial of [the defendant's] right to effective assistance of counsel was premature because it is inconsistent with *Strickland's* demand that an aggrieved defendant demonstrate actual substandard performance and prejudice resulting therefrom.

*Id.* at 210 (referring to *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Likewise, Stern's

assertion that he cannot provide effective assistance of counsel to his appointed client is premature because it is inconsistent with *Strickland's* requirement that an aggrieved defendant demonstrate actual substandard performance and prejudice resulting from his attorney's performance.

Accordingly, the trial court's order is affirmed.

VOLLACK, J., does not participate.