**Hugh H. GRANT and John F. Grant, d/b/a Grant and Grant, a partnership, Appellants,**

v.

**STATE of Alaska, Appellee.**

**No. 2855.**

Supreme Court of Alaska.

Feb. 16, 1977.

---

Fred J. Baxter and James F. Petersen, Juneau, for appellants.

Peter B. Froehlich, Asst. Atty. Gen., and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

RABINOWITZ, Justice.

The Grants appeal from the superior court's entry of summary judgment in favor of the state in an inverse condemnation action. We reverse the entry of summary judgment and remand to the superior court for further proceedings.

In the late 1960's, the State of Alaska decided to construct an expressway running from the Juneau airport to the downtown area. In November 1972 Ms. Winifred Mathis, the prior owner of the real property involved in this litigation, and eight other owners of property located along the new highway instituted an inverse condemnation action against the State of Alaska for deprivation of their water access to the adjacent Gastineau Channel.[1]

Approximately one month after bringing this inverse condemnation suit, Ms. Mathis sold her property to appellants Hugh and John Grant. The Agreement of Sale entered into by the parties provided:

1. This suit was captioned in part *Leach v. Alaska Dept. of Highways,* Superior Court No. 72–405, First Judicial District, Juneau.

> In this suit Mathis alleged in part that her access to and view of said tidal waters will be obstructed or cut off by the construction of said project.

Grantor hereby expressly reserves any and all rights and claims she may have against the State of Alaska and the Alaska Department of Highways for damages to the above-described property resulting from the planning and construction of the Glacier Expressway.[2]

With the exception of this reservation clause, the Agreement of Sale makes no mention of Mathis' claim for damages arising from the inverse condemnation.

At the time Ms. Mathis conveyed the property to the Grants, the Department of Highways had planned to install a large culvert under the expressway which would permit ingress and egress of small craft to the Mathis property. In 1974, during the construction of the expressway, this culvert, which was located directly in front of the Mathis property, collapsed. On approximately March 13, 1974, the Department of Highways decided that the underpass culvert would not be replaced.

Thereafter, on March 19, 1975, the state and Mathis entered into a "Stipulation of Settlement and Dismissal with Prejudice" with respect to the inverse condemnation suit. In the stipulation agreement Mathis dismissed "with prejudice her claim against the State for compensation for the taking of water access to her property caused by construction of the Glacier Expressway. . . ." In this document Mathis further acknowledged "receipt of the sum of $22,-425 as Just Compensation for the taking of water access from her property as described above and damages arising out of or resulting from the taking . . .."

After Mathis had entered into the stipulated settlement with the state of her claim for inverse condemnation, the Grants, in October 1975, instituted an action against the State of Alaska in superior court. As had Mathis, the Grants grounded their claim for relief against the state on the theory of inverse condemnation. In their complaint, the Grants asserted that they had purchased the property in question from Mathis in reliance upon the state's construction plans for the Glacier Highway. They further alleged that at the time they entered into the Agreement of Sale with Mathis the state contemplated the installation of a culvert directly in front of the subject property in order to provide water access to the property. The gist of the Grants' basis for recovery against the state is found in the following paragraph of their complaint.

Pursuant to the Agreement of Sale, [the Grants] are the individuals that have been denied the water access since the former owner Winifred E. Mathis was compensated by the State of Alaska for the taking based upon the original construction plans providing water access to the subject property upon which the [Grants] relied when purchasing the property in question.

The state filed a motion for summary judgment, or in the alternative, for leave to file a third-party complaint or to require the joinder of Mathis as a necessary party. The motion for summary judgment was grounded on the state's contention that it had compensated Mathis for the loss of water access to the property as was required by the reservation clause in the Agreement of Sale.[3] In the state's view the Grants were now seeking compensation for the very same claim, impairment of water access to the Mathis property, which Mathis had previously asserted and for which she had received over $20,000 in compensation from the state in settlement of this claim. In its order granting summary judgment, the superior court found that there were no genuine issues of material fact and that "for the reasons urged" by the state the motion should be granted. Thus, we must deter-

---

**2.** The Agreement of Sale also provided, in a standard integration clause, that:

This instrument contains the entire written Agreement between the parties. There are no oral promises, representations or warranties between the parties regarding any matter or thing connected with or related to the matters and things which are the subject of this contract.

**3.** The Agreement of Sale had been made part of the record in *Leach v. Alaska Dept. of Highways,* Superior Court No. 72–405.

mine whether the superior court was correct in granting the state's motion for summary judgment in an action in which the Grants claimed an uncompensated taking due to the elimination of water access.

Article I, section 18 of the Alaska Constitution provides that "[p]rivate property shall not be taken or damaged for public use without just compensation." In *Wernberg v. State,* 516 P.2d 1191 (Alaska 1973), this court held that the state must justly compensate the property owner when it takes, by inverse condemnation, a littoral access right. In the case at bar the state does not contend that such a right to compensation does not exist. Rather, the state maintains that just compensation was paid to Mathis, pursuant to the reservation clause in the Agreement of Sale, for "taking of water access to her property caused by the construction of the Glacier Expressway" and that any further award to the Grants would result in double payment by the state for the identical impairment of littoral access rights.

The Grants contend that a second taking, separate and apart from the one for which Mathis received compensation, occurred when the state altered its construction plans and decided not to replace the culvert which had collapsed.[4] Had the Glacier Expressway been completed for some time prior to the collapse of the culvert and its nonreplacement, the Grants would have been entitled to compensation when they were deprived of water access to the Gastineau Channel. However, as was mentioned previously, the facts show that in the 1974 construction season, prior to the completion of the expressway, the state decided not to replace the collapsed culvert which was located across from the Mathis property. Thus, the state maintains that the taking of

water access was from one project, the planning and construction of the Glacier Expressway.[5]

In *Stewart & Grindle, Inc. v. State,* 524 P.2d 1242 (Alaska 1974), this court stated that once an owner is deprived of the economic advantages of legal ownership, a taking has occurred. Therefore, in the case at bar, it could be argued that the primary economic interference occurred when the state decided to build the expressway on the tidal land, thereby cutting off water access to the channel for some of the landowners. However, if it is assumed that the parties were entitled to rely on the state's construction plans, there was a second economic interference when the state decided not to replace the collapsed culvert. When the Agreement of Sale was entered into by the Grants and Ms. Mathis, there was no more reason to anticipate complete elimination of water access to the property than there would have been to expect that the state might change the location of the highway right-of-way in such a way as to further interfere in the use and enjoyment of the property. Just as the Grants would be entitled to compensation for any additional reduction in the value of the property in the latter case, we hold that they are entitled to compensation in the former case. Although the state is clearly not bound to abide by its plans and specifications, it is reasonable for negotiating parties to assume that those plans will be implemented. Where the plans are not implemented, any further economic interference constitutes a second taking for which the state must pay just compensation. The state contends that the terms of the reservation clause found in the Agreement of Sale between Mathis and the Grants covered the nonreplacement of the

4. In response to the state's motion for summary judgment, Hugh Grant submitted an affidavit in which he averred that at the time the Agreement of Sale was entered into, Mathis and the Grants discussed the culvert which would provide water access and that the reservation of the claim against the state

did not include a claim for the nonreplacement of the culvert because the culvert was called for at that time and we had no reason to

believe that it would not be installed according to construction specifications and design.

5. It has been held in somewhat analogous situations that completion of the work on a construction project constitutes an effective and complete taking. *See* 2 J. Sackman, Nichols on Eminent Domain § 6.1[2], at 6–18 (3d ed. rev. 1976).

culvert. This reservation clause was obviously drafted in contemplation of the inverse condemnation suit Mathis had filed against the state.

At the time the Agreement of Sale was executed in December 1972, the state's construction plans called for the inclusion of the culvert, thus allowing for some water access to the property. Thus, we hold that the reservation clause does not encompass this second taking which could not have been anticipated by the parties.

■ In light of our reversal of the superior court's grant of summary judgment to the state, on remand the superior court should grant the state's motion for leave to file a third-party complaint or to require the joinder of Ms. Mathis. We believe that if Ms. Mathis is made party to the suit, the state's seemingly reasonable claim that they compensated her for all damages to the subject property's littoral access can be properly adjudicated.

Reversed and remanded.