Delbert ALSOP, Stan Borucki, Paul N. Johnson, Lloyd V. Morris, Daniel A. Thomas, Robert B. Windom, Edward J. Young, and all other persons similarly situated, Appellants,

v.

STATE of Alaska, Appellee.

No. 3023.

Supreme Court of Alaska.

Nov. 24, 1978.

Robert H. Reynolds and James Bendell, Robinson, McCaskey, Reynolds & Frankel, Anchorage, for appellants.

Richard P. Kerns, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

CONNOR, Justice.

In August, 1974, appellants brought what purported to be a class action seeking a declaratory judgment. They sought reimbursement from the state for the decrease in access to their property which would result from what was then a proposed redesign of the New Seward Highway in Anchorage. The trial court ruled that none of the appellants would suffer any compensable damage by reason of the redesign. Appellants contend in this appeal that this ruling by the trial court was erroneous.

The appellants are owners of property located in the vicinity of 76th Avenue and the New Seward Highway in Anchorage. At least some of the appellants, or their predecessors in interest, had portions of their property condemned by the state during the late 1960's for construction of the New Seward Highway.[1] At the time of condemnation, appellants' property was not commercially developed.

The 1968 map [Appendix A], which the state's right-of-way agents used in acquiring land for the new highway and bordering frontage roads, provided for a controlled access facility with stop sign controlled intersections at points to be later designated. Even though the 1968 plan did not call for overpasses at the access points, but rather provided for cross-traffic intersections controlled only by stop signs, the testimony at trial clearly established that this was nevertheless a controlled access

---

1. Although appellants purported to file their lawsuit as a class action, the trial judge declined to rule on the class issue since he ruled that the highway modifications would not constitute a taking or damage to private property under the law of eminent domain. Consequently, the original record on appeal did not adequately describe the property owned by each of the named plaintiffs. Appellants characterize themselves as "owners of certain real property abutting or in the immediate vicinity of the new Seward Highway and 76th Avenue."

facility as that term is understood by highway designers.[2]

The 1968 plan called for the acquisition of sufficient land so that the state could later upgrade the New Seward to a fully controlled access facility by building overpass intersections. The plan did not provide any firm indication of the exact points at which overpass intersections would be built if the upgrading did occur, but it did call for acquisition of sufficient property at 76th Avenue to construct an intersection of some sort. By the time the complaint in this case was filed, the New Seward had in fact been constructed with stop sign intersections at Dowling Road, at 76th Avenue and at Dimond Boulevard.

Appellants claim that during the proceedings condemning their property, they became concerned that access to their property would be limited by the new highway. Consequently, as part of his settlement negotiations with the highway department, appellant Alsop, as spokesperson for the group, attempted to convince the state to include an intersection at 76th Avenue. As a result of these negotiations, the state did add an intersection at 76th Avenue, which had not been part of the original plan. Alsop testified at trial that the agreement to build an intersection at 76th was crucial to settlement of his condemnation claim.

The original New Seward Highway was opened for travel in November, 1971. A full cross-traffic intersection had been built at 76th Avenue. A frontage road was a two-way street parallel to the highway. At least some of the appellants' property appears to have abutted on the frontage road after the original construction project was completed.

After the highway was opened, the Greater Anchorage Area Borough rezoned the properties to the east of the New Seward to business uses. In reliance on the 1971 design of the highway and on the rezoning, appellants began commercial development of their properties.

In 1974, the appellants learned that the state was considering upgrading the New Seward to a fully controlled access facility. The new plan [Appendix B] called for overpass intersections at Dowling and Dimond and for closure of the 76th Avenue intersection. Further, the plan provided for one-way frontage roads on each side of the New Seward between Dimond and Dowling to replace the existing two-way frontage road on the east side of the highway.[3] Uncontradicted evidence at trial indicated that the more circuitous access to the 76th Avenue property would appreciably reduce its commercial value.

Appellants attempted to influence the highway department to abandon or to revise its 1974 proposal. They even submitted an alternate proposal which they had had drawn up by independent designers. The state rejected appellants' plan, which called for an intersection at 76th, because the state felt that highway design principles dictated that diamond intersections at both 76th and Dimond, only a half mile away, would be unwise. The state did attempt to build two-way frontage roads, but found the one-way roads to be necessary because the right-of-way acquired by the state was not wide enough to accommodate two-way roads as well as diamond intersections. After the state notified appellants that it intended to proceed with its

**2.** A state highway department right-of-way agent, responsible for acquisition of the New Seward Highway right-of-way, testified at trial that a controlled access highway is one that provides access for traffic only at points determined by good highway design practice and designated by the commissioner of highways. A highway department engineer's testimony supported this definition.

**3.** The only access to 76th from the highway envisioned by the 1974 plan was to allow traffic southbound on the highway to exit onto 76th to

the west. The only access to the highway from 76th envisioned by the plan was to allow traffic westbound on 76th to enter the highway northbound.

The 1974 plan required traffic northbound on the highway to travel one mile north of 76th to Dowling and then one mile south in order to exit westbound on 76th. It required traffic southbound on the highway to travel one-half mile south of 76th to Dimond and then one-half mile north in order to exit eastbound on 76th.

plan to close the 76th Avenue intersection, appellants commenced this action.

As noted above, the trial court ruled that the appellants had suffered no compensable damage by reason of the closure of the 76th Avenue intersection or by reason of the conversion of the frontage road on the east side of the highway from two-way traffic to one-way traffic.[4] Further, the trial court ruled that the modifications to the controlled access facility did not constitute a taking or damage to private property under the law of eminent domain. Judgment was entered accordingly, and this appeal followed.

After hearing oral argument on the appeal, we determined that the record was insufficient for us to rule upon the questions of law which were presented. Therefore, we remanded the case to the superior court to receive further evidence and to make findings which would assist us.[5] We also ordered additional briefs by the parties.

In light of the superior court's findings, it now appears that appellant Alsop conditioned the settlement of his condemnation case on the continuation of unrestricted access to the New Seward Highway at the 76th Avenue intersection. The findings do not reveal that any other owner relied upon the continuation of unrestricted access at 76th Avenue, although it is conceivable that some other owners could have such a claim, as will be developed below.[6]

Article I, Section 18 of the Alaska Constitution provides that "[p]rivate property shall not be taken or damaged for public use without just compensation." In the past we have liberally construed this provision in favor of the private property owner.[7]

Appellants contend that while some of them received compensation for the taking of their property for construction of the original New Seward Highway, a second taking occurred, separate from the first, when the state decided to redesign the highway in 1974. They maintain that the second taking, which consisted of a loss of access due to closure of the 76th Avenue intersection and due to the limitation of travel on the frontage road to one-way traffic, caused them to suffer substantial economic damage for which they are entitled to compensation. We agree that this can constitute a second taking if the settlement or the receipt of an award had been in reliance upon unrestricted access via 76th Avenue.

In *Grant v. State*, 560 P.2d 36, 39 (Alaska 1977), we held that while the state

4. By the time Judge Hanson entered judgment in June, 1976, thirteen months after the May 1975 trial, the proposed modifications were already well underway.

5. Our order requested that evidence be taken on the following matters:
(1) The location of the property owned by each plaintiff which is claimed to have been damaged by the redesign of the New Seward Highway, including an indication whether each piece of property abuts on the New Seward Highway, on 76th Avenue, or on the frontage roads paralleling the New Seward Highway;
(2) Which of the plaintiffs had property condemned for construction of the original New Seward Highway, and whether each of the plaintiffs, if any, conditioned settlement of his condemnation claim on access to the New Seward Highway at 76th Avenue or on the original design of the frontage road paralleling the New Seward Highway. Any and all deeds relating to the above shall be placed in evidence.
(3) The extent of the increase in circuity of access imposed on each plaintiff's property;

(4) The specific damage to each plaintiff resulting from the increase in circuity of access and the cause of the damage to each plaintiff.
(5) In addition to testimony, there shall be prepared maps or plats to demonstrate the evidence referred to above in (1), (2), and (3).

6. As to appellant Audie Moore, it appears that before purchasing property from Marvin Kocurek, Moore was informed of the state's plan to allow unrestricted access at 76th Avenue. It does not appear from the findings that Moore had any property taken by the state, or that he settled or received an award in reliance on the state's plan. As will be developed below, unless these events occurred, Moore would not be entitled to compensation because of the alterations of the 76th Avenue intersection.

7. *See Grant v. State*, 560 P.2d 36 (Alaska 1977); *State v. Hammer*, 550 P.2d 820 (Alaska 1976); *Wernberg v. State*, 516 P.2d 1191 (Alaska 1973).

is not bound to abide by its construction plans, parties to condemnation proceedings are entitled to rely on the state's announced plans. Further, we held that when such plans are not implemented, any further economic interference with the condemnee's property which results constitutes a second taking for which the state must pay just compensation.

The state highway construction project in *Grant* deprived the property owner of water access to an adjacent channel. The state's plan originally had called for construction of a culvert under the new highway, thus preserving access to the property for at least small craft. When the culvert collapsed during construction of the highway, the state decided not to replace it.

■ Like the property owner in *Grant*, those of the appellants who had property taken for the original construction project in this case were entitled to assume that the 1968 plan for the New Seward Highway would be implemented. When the plan was implemented and then altered, appellants became entitled to just compensation for any further, resultant economic interference with their property.[8]

■ We hold that in order to recover damages, each of the appellants must demonstrate that he or a predecessor in interest had a portion of his property taken for the original construction project, that he or his predecessor relied on construction of an intersection at 76th Avenue or the two-way frontage road, or both, in settling or receiving an award for their condemnation claims,[9] and that his remaining property has decreased in value as a result of the highway modifications.

Under our holding it is clear that appellant Alsop has a right to litigate his entitlement to damages, if any, suffered by the alteration of the 76th Avenue intersection. There may be others who fall within the category of persons subjected to a second taking, as defined in our holding above. They too must be permitted to assert their claims.[10]

Appellants assert a broad right to compensation for "surrounding property owners" upon whom is imposed a more circuitous means of access. They would have us hold that owners of property not abutting upon the New Seward Highway project, who were not subjected to a taking of property for the project, should be compensated for an economic injury to their property because of the alteration of the 76th Avenue intersection.

■ We cannot accept appellants' argument for such an amorphous form of

8. The reasoning behind our decision in *Grant* necessitates compensation for decreases in the value of appellants' property due either to the closure of the 76th Avenue intersection or to the change in traffic flow on the frontage road. As to the latter, see our decision in *Wernberg v. State*, 516 P.2d 1191, 1201 (Alaska 1973), in which we stated that a change in traffic flow from two-way to one-way may, under certain circumstances, result in a compensable taking of access to property. Finally, we note that appellant Alsop's deed to the state of the property taken for the original highway project expressly reserved to Alsop a right of access to the frontage road and access to the main highway at the points shown on the plat on file in the office of the Commissioner of Highways. Thus, when the road was altered to one-way traffic flow, a more circuitous access was imposed on owners who clearly had an established right of access to the frontage road.

9. We do not mean to imply that in order to recover, each of the appellants must demonstrate that he expressly negotiated with the state for inclusion of the 76th Avenue intersection in the original highway plan. Appellants need not show that the addition of the intersection was an agreed-upon part of the consideration for settlement of their claim; they need only show that at the time they settled their claims, they understood that the intersection would be added and later suffered damage when it was removed.

10. Because of the confused status of this case as a purported class action, it is not clear to us, even after the proceedings on remand, whether there are parties in addition to Alsop who fit within our holding. The findings rendered on remand do not negate such a possibility. Any imprecision in the findings is certainly not the fault of the superior court. It diligently followed the terms of our remand in great detail, but it could not have known the contours of our ultimate holding as to who is entitled to claim damage because of the alteration of the 76th Avenue intersection.

liability. Where only an indirect access is cut off from a non-abutting landowner, and other, although more circuitous, access remains, there can be no right to compensation. Were it otherwise, vast numbers of persons could claim compensation on the theory that they were inconvenienced because their means of access were reduced through the construction of a limited access highway. It is hard to envisage the practical and logical limits within which any such doctrine could be held. We hold that non-abutting owners, whose property has not been taken, cannot claim damages because a more circuitous access route is imposed upon them.[11]

■ Further, we hold that this is not a proper situation for maintenance of the suit as a class action. In order to maintain a lawsuit as a class action there must be a sufficient community of interest among the class members. In addition, maintenance of the suit as a class action must result in substantial benefits to both litigants and the court.[12] Where each member of a proposed class would be required to individually litigate numerous and substantial questions to determine his or her right to recover following the class judgment, a class action is not appropriate unless the questions which may be jointly tried are suffi-ciently numerous and substantial to make the class action advantageous to the judicial process as well as to the litigants.[13]

■ It does not appear to us that there are sufficient common questions in this case to make a class action advantageous. In addition to the damage issues, which obviously would have to be separately tried, there are questions which would have to be individually tried before the liability of the state to individual property owners could be established. As we noted earlier, each property owner must establish that he or his predecessor in interest had a portion of his property take for construction of the original New Seward Highway, and each must establish that in settling or receiving an award for his condemnation claim, he relied on the construction of an intersection at 76th Avenue or the two-way frontage road, or both. Since these questions must be individually litigated as a prerequisite to establishing liability, a class action cannot provide sufficient advantage to the judicial process or to the litigants to warrant its use in this case.

AFFIRMED in part, REVERSED, in part, and REMANDED to the superior court for entry of a declaratory judgment consistent with this opinion.[14]

---

11. Appellants argue from numerous authorities which concern circuity of access as a species of damage without considering the point that these materials deal with *abutting* owners. *See, e. g., Bacich v. Board of Control*, 23 Cal.2d 343, 144 P.2d 818 (1944), *Breidert v. Southern Pacific Co.*, 61 Cal.2d 659, 39 Cal.Rptr. 903, 394 P.2d 719 (1964), *People v. Russell*, 48 Cal.2d 189, 309 P.2d 10 (1957); Covey, "Frontage Roads; to Compensate or Not to Compensate," 56 Nw.U.L.Rev. 587 (1961); Mayberry and Oloi, "Compensation for Loss of Access in Eminent Domain in New York; a Reevaluation of the No-Compensation Rule with a Proposal for Change," 16 Buffalo L.Rev. 603 (1967); "The Limited Access Highway," 27 Wash.L.Rev. 111 (1952). 2A Nichols, Eminent Domain, Sec. 6.441[1] (3rd Ed. 1976), gives some of the reasons for excluding compensation to owners whose property has not suffered an actual taking or substantial damage resulting from a change of access.

12. *City of San Jose v. Superior Court of Santa Clara County*, 12 Cal.3d 447, 115 Cal.Rptr. 797, 525 P.2d 701, 708–712 (Cal.1974). *See also,*

*Occidental Land, Inc. v. Superior Court of Orange County*, 18 Cal.3d 355, 134 Cal.Rptr. 388, 556 P.2d 750, 753 (1976); *Blue Chip Stamps v. Superior Court of Los Angeles County*, 18 Cal.3d 381, 134 Cal.Rptr. 393, 556 P.2d 755, 758 (1976).

13. *City of San Jose v. Superior Court of Santa Clara County*, 12 Cal.3d 447, 115 Cal.Rptr. 797, 525 P.2d 701, 710 (1974). *See also, United Farm Workers v. Superior Court of Monterey County*, 16 Cal.3d 499, 128 Cal.Rptr. 209, 546 P.2d 713, 717 (1976).

14. The complaint in this action was only for declaratory or injunctive relief. Therefore, we remand to the trial court for entry of judgment limited in scope to the relief sought in the complaint. We presume that additional litigation will be necessary in order to finally resolve this dispute.

In view of our disposition we need not address appellants' contention that the superior court's Finding of Fact No. 2.2B, which computed the distances of various alternative means of access, was erroneous.