Stephen S. DeLISIO, Appellant,

v.

ALASKA SUPERIOR COURT, Appellee.

No. S-608.

Supreme Court of Alaska.

July 21, 1987.

---

Kirsten Tinglum, Douglas B. Baily, Baily & Mason, Anchorage, for appellant.

Susan D. Cox, Asst. Atty. Gen., Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

■ In this appeal we have been called upon to reconsider the question of whether a private attorney may be compelled to represent an indigent criminal defendant without just compensation. We now conclude that Article I, section 18 of the Alaska Constitution requires a negative answer to this important question. While we strongly affirm the attorney's time-honored ethical obligation to provide cost-free representation to those in need and the corresponding obligation to accept court appointment on similar terms, Alaska's constitution will not permit the state to deny reasonable compensation to an attorney who is appointed to assist the state in discharging its constitutional burden.

### I

Stephen DeLisio, an attorney in private practice in Anchorage, was in 1984 appointed by superior court judge Beverly Cutler to represent Stephen Ningeok, an indigent charged with sexual abuse of a minor.[1] DeLisio refused the appointment. At a non-jury hearing before the Honorable Mark C. Rowland, then Presiding Judge of the Third Judicial District, DeLisio's appointment was confirmed and he was ordered to commence representation by a specified date or be jailed for contempt until such time as he undertook the representation. We stayed the contempt citation pending DeLisio's motion for reconsideration and another attorney was appointed to represent Ningeok. On reconsideration, the contempt was reaffirmed. This appeal followed.

### II

Initially, we reject DeLisio's contention that he is incompetent to represent a criminal defendant. At the contempt hearing before Judge Rowland, DeLisio stated that he had not handled a criminal case of any magnitude for at least fifteen years. He acknowledged, however, that he had served as a court-appointed criminal defense attorney from 1962 to 1963, had worked as a prosecutor for a year and a half, and had handled occasional criminal appointments between 1965 and 1967 or 1968. While criminal practice and procedure has undoubtedly changed since DeLisio was active in the criminal bar, the assertion that an attorney with DeLisio's trial experience is unable to provide adequate representation is at best disingenuous and need not be seriously considered.[2]

■ DeLisio's assertion that he should have been afforded a jury trial on the contempt citation is similarly without merit.

---

1. The public defender agency was unable to represent Ningeok because of a conflict of interest.

2. DeLisio has practiced law in Alaska for many years and is an experienced trial attorney.

While it is true that a jury trial may be required when considering a criminal contempt, incarceration, *per se,* does not make the contempt criminal. *See E.L.L. v. State,* 572 P.2d 786, 789 (Alaska 1977). "[T]here is no right to a jury trial in a civil contempt proceeding when the sole purpose of the proceeding is to compel the contemnor to perform some act that he or she is capable of performing." *Pharr v. Fairbanks North Star Borough,* 638 P.2d 666, 668 (Alaska 1981). *See also Gwynn v. Gwynn,* 530 P.2d 1311 (Alaska 1975).

Here, the record amply demonstrates the nonpunitive, coercive nature of the sanction. In denying DeLisio's request for a jury trial Judge Rowland explained:

The Superior Court did not and does not now intend to punish Mr. DeLisio for his refusal to undertake the responsibilities of representation.... The responsibilities he was ordered to undertake have been assumed by another. If the Supreme Court dissolves its stay or upholds the Superior Court's order appointing Mr. DeLisio, Mr. DeLisio will be appointed to another case, and will be incarcerated only if he refuses to follow this Court's lawful order and only until he agrees to do so.

The Court's order of incarceration was purely coercive and in the nature of a civil contempt. No element of punishment was intended. Under the circumstances Mr. DeLisio is not entitled to a jury trial.

We agree. DeLisio was not wrongfully denied a jury trial.

### III

DeLisio next argues that requiring an attorney to represent an indigent defendant without reasonable compensation is a taking of private property for a public use

under the fifth and fourteenth amendments of the United States Constitution and article I, section 18[3] of the Alaska Constitution. We have rejected this argument on two prior occasions. In *Jackson v. State,* 413 P.2d 488, 490 (Alaska 1966), we held that

an attorney appointed to represent an indigent prisoner in a criminal matter has no constitutional right to receive compensation for his services. He has a right to compensation only to the extent that a statute or court rule may so provide.

In *Wood v. Superior Court,* 690 P.2d 1225 (Alaska 1984), we reaffirmed that ruling, stating that

an order requiring an attorney to represent a criminal defendant [does not] necessarily take that attorney's private property without just compensation. ...
It may be that in some extreme cases an assignment would cripple an attorney's practice and thus rise to the level of a taking. But Wood has not shown that this is an extreme case.

*Id.* at 1229 (citations omitted). We are now persuaded that our prior rulings are in error.

### A

Alaska's "takings clause" prohibits the taking of private property for a public purpose without just compensation.[4] The underlying intent of the clause is to ensure that individuals are not unfairly burdened by disproportionately bearing the cost of projects intended to benefit the public generally. *State v. Hammer,* 550 P.2d 820, 826 (Alaska 1976); *see also* L. Tribe, *American Constitutional Law,* § 9–4, at 463–65 (1978).[5] In order to effectively fulfill this purpose, a liberal construction of the clause in favor of the private property owner is

**3.** Alaska Const. art. I, § 18 provides that:
Private property shall not be taken or damaged for public use without just compensation.
We have held that the term "damages" affords the property owner broader protection than that conferred by the Fifth Amendment of the Federal Constitution. *See State v. Doyle,* 735 P.2d 733, 736 (Alaska 1987); *State v. Hammer,* 550 P.2d 820, 823–34 (Alaska 1976). Consequently,

we need not consider DeLisio's federal constitutional claims.

**4.** Alaska Const., art. I, § 18, set forth in note 3.

**5.** Professor Tribe describes the the compensation requirement of the takings clause as an attempt to limit arbitrary sacrifice of the few to the many.

required. *E.g., Alsop v. State,* 586 P.2d 1236, 1239 & n. 7 (Alaska 1978).

With these general principles in mind, an examination of the several justifications for denying compensation is in order. We note initially that the great weight of authority favors the denial of compensation. *See e.g., Williamson v. Vardeman,* 674 F.2d 1211, 1214–15 (8th Cir.1982), and cases cited therein.

First, it is averred that the appropriation of an attorney's service can raise no issue under the takings clause because the practice of law is a privilege conferred by the state rather than a protected property interest. *See, e.g., Ruckenbrod v. Mullins,* 102 Utah 548, 133 P.2d 325, 330–31 (1943). Assuming, *arguendo,* that we are here concerned with appropriation of "the practice of law" as opposed to appropriation of an individual's labor, the argument nonetheless is unconvining. In *Frontier Saloon v. Alcoholic Beverage Control Board,* 524 P.2d 657 (Alaska 1974), we noted that

> It has long been recognized that an interest in a lawful business is a species of property entitled to the protection of due process. This interest may not be viewed as merely a privilege subject to withdrawal or denial at the whim of the state. Neither may this interest be dismissed as *de minimis.* A license to engage in a business enterprise is of considerable value to one who holds it.

*Id.* at 659–60 (citations & footnotes omitted). We have recognized that membership in the state bar entitling one to engage in the practice of law deserves the same protection. *In re Butterfield,* 581 P.2d 1109, 1110–12 (Alaska 1978); *Application of Peterson,* 459 P.2d 703, 710 (Alaska 1969); *In re Mackay,* 416 P.2d 823, 850 (Alaska 1964), *cert. denied,* 384 U.S. 1003, 86 S.Ct. 1907, 16 L.Ed.2d 1016 (1966). Thus, a license to practice law is not a mere privilege, granted or revoked at the whim of the state, but is a substantial interest protected

by the due process clause of the Alaska Constitution.[6]

Notwithstanding the above, however, we reject the basic premise that it is the practice of law which is at issue. No one has argued that DeLisio would have had taken from him his ability to practice law. Rather, DeLisio would have had taken from him his labor. Thus, whether a license to practice law is a "mere privilege" or a "substantial property right" is irrelevant to the issue at hand.

A related argument is that personal services, such as those provided by attorneys, are not "property" within the meaning of the takings clause. *See generally,* D. Shapiro, *The Enigma of the Lawyer's Duty to Serve,* 55 N.Y.U.L.Rev. 735, 771–77 (1980). Whatever the merit of this argument under the federal Constitution, we reject it as it applies to the Alaska Constitution. We see no language in our takings clause to indicate that services should be excluded from the section's protections, and are unaware of any constitutional convention history indicating such exclusive intent. Consequently, we perceive no reasoned basis for excluding such services.

Indeed, excluding personal services from the clause's provisions is manifestly unreasonable. It has long been recognized that "[l]abor is property. The laborer ha[s] the same right to sell his labor, and to contract with reference thereto, as any other property owner." *Coffeyville Vitrified Brick & Tile v. Perry,* 69 Kan. 297, 76 P. 848, 850 (1904). This axiom applies with no less force to an attorney's services than it does to any other labor. As early as 1854 the Supreme Court of Indiana stated that

> To the attorney, his profession is his means of livelihood. His legal knowledge is his capital stock. His professional services are no more at the mercy of the public, as to remuneration, than are the goods of the merchant, or the crops of the farmer, or the wares of the mechanic.

---

**6.** Alaska Const. art. I, § 7 provides:
 No person shall be deprived of life, liberty, or property, without due process of law. The

right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.

*Webb v. Baird,* 6 Ind. 13, 17 (1854), *quoted in State ex rel. Scott v. Roper,* 688 S.W.2d 757, 762 (Mo.1985) (en banc). We accept this characterization and, accordingly, hold that an attorney's services are "property" within the meaning of article I, section 18.

A second argument is that the traditional/historical position of the attorney as an "officer of the court" requires the provision of free services when demanded. As we stated in *Jackson:*

> The requirement of the attorneys' oath and Canon 4 reflect a tradition deeply rooted in the common law—that an attorney is an officer of the court assisting the court in the administration of justice, and that as such he has an obligation when called upon by the court to render his services for indigents in criminal cases without payment of a fee except as may be provided by statute or rule of court.

413 P.2d at 490. We are now convinced, however, that the attorney may not be denied reasonable compensation solely on the basis of this tradition. As previously noted, and as our dissenting colleague argues, there is a longstanding tradition in the United States of compulsory representation of indigent defendants without full compensation. However, this practice is neither as traditional nor as venerable as had been previously supposed. More importantly, we believe that tradition alone, regardless of its venerability, cannot validate an otherwise unconstitutional practice.

In holding that the court does not have authority to appoint counsel in civil cases, the Supreme Court of Missouri recently performed an exhaustive analysis of the historical foundation for uncompensated appointment of counsel. *State ex rel. Scott v. Roper,* 688 S.W.2d 757 (Mo.1985) (en banc). That court's opinion dispels many assumptions which have been frequently repeated in cases addressing this issue.[7]

The court first discussed the doctrine often attributed to the common law of Eng-

land that lawyers are officers of the court. *Id.* at 761. English "attorneys" were indeed treated as officers of the court, but the English "attorney" resembled a court clerk whose primary functions were ministerial. *Id.* at 765. The court had direct control over these officers and granted them important privileges, such as exemption from suit in another court, serving in the militia and being compelled to hold another office. *Id.* at 766.

These privileges are not now available to the American attorney and have been unavailable for some time. The Indiana Supreme Court determined over a century ago that the role of attorneys in the United States is not comparable to that of English attorneys:

> The legal profession having been thus properly stripped of all its odious distinctions and peculiar emoluments, the public can no longer demand of that class of citizens any gratuitous services which would not be demandable of every other class.

*Webb v. Baird,* 6 Ind. at 16–17, *quoted in Scott,* 688 S.W.2d at 761–62.

English serjeants-at-law may have been called upon to perform gratuitous services, but their role is also unmatched in current U.S. practice. Their elite position was akin to that of a public office holder. *Scott,* 688 S.W.2d at 766. The role of the English barrister, on the other hand, appears to have been similar to that of today's trial attorney. Barristers have never been treated as officers of the court and it is doubtful whether they could be compelled to represent a party. *Id.* at 765–66.

The Missouri court also discredits the rationale that lawyers have a traditional professional obligation to provide gratuitous service. *Id.* at 763. Prior to 1969, the Code of Professional Responsibility did not even mention pro bono representation. *Id.; see also, Proceedings of the Second National Conference on Legal Services & the Public,* December 7 & 8, 1979, at 21 (1981). The American Bar Association recently re-

---

**7.** We recognize that the Missouri decision was rendered in a case involving a civil, rather than a criminal, appointment. However, the histori-

cal analysis contained in *Scott* applies as well to criminal appointments.

jected a proposed provision for mandatory pro bono representation. *Id.* Currently, the Model Rules of Professional Responsibility merely encourage such service. *See* Model Rule of Professional Conduct 6.1 (1983). Thus, the history of court appointment of attorneys is hardly as clear or as consistent as is sometimes indicated and cannot by itself justify the practice advocated.

Related to this argument is the assertion that attorneys are not entitled to compensation for their court appointments because the license to practice carries with it certain conditions, one of which is the obligation to represent indigent criminal defendants gratuitously. By accepting the license to practice, it is argued, the attorney implicitly accepts these conditions. Again in *Jackson* we stated that

> An applicant for admission to practice law may justly be deemed to be aware of the traditions of the profession which he is joining, and to know that one of these traditions is that a lawyer is an officer of the court obligated to represent indigents for little or no compensation upon court order. Thus, the lawyer has consented to, and assumed, this obligation and when he is called upon to fulfill it, he cannot contend that it is a "taking of his services."

413 P.2d at 490, (quoting *United States v. Dillon,* 346 F.2d 633, 635 (9th Cir.1965), *cert. denied,* 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966)).

The Supreme Court of Utah, in rejecting the same argument, stated that

> While the right of personal liberty and the right to earn a livelihood in any lawful calling are subject to the licensing power of the state, a state cannot impose restrictions on the acceptance of the license which will deprive the licensee of his constitutional rights. If states have the power to impose the duty to render gratuitous services on the license of an attorney, that power must be based on more than the mere right of the state to license.

*Ruckenbrod,* 133 P.2d at 327 (citation omitted). We agree. Imposing upon the attor-

ney as a condition to practice a requirement which would demand the rendering of personal services without just compensation would in itself be an impermissible infringement of Alaska's due process clause and, thus, may not serve as the basis for avoiding the provisions of the takings clause.

Finally, it is urged that denial of compensation is justified because the duty to render gratuitous representation is nothing more than a generalized duty to aid the state, a duty owed by all citizens equally. Thus, it is argued, the state is under no obligation to provide compensation for the provision of the service. We cannot agree. It is certainly true, however, that there are services which all citizens are obliged to render without compensation. For example, it has long been held that absent statute there is no right to compensation for compelled jury service. *Maricopa County v. Corp.,* 44 Ariz. 506, 39 P.2d 351 (1934). The appropriation of such a service will not constitutionally require compensation for several reasons, most notably because such services are broad-based, applying to the citizenry as a whole rather than to any discrete or identifiable class of persons. The service appropriated in the present action, by contrast, is not one which may be provided by the citizenry in general, but only by a specifically identifiable class of persons.

### B

After considering and rejecting these various arguments, we are persuaded that a court appointment compelling an attorney to represent an indigent criminal defendant is a taking of property for which just compensation is required. First, as discussed above, the attorney's service is undeniably property within the meaning of the takings clause. Second, the appropriation of that property is a taking. We have indicated that a taking will be accomplished when the state deprives the owner of the economic advantages of ownership. *Grant v. State,* 560 P.2d 36, 39 (Alaska 1977); *City of Anchorage v. Nesbett,* 530 P.2d 1324, 1335 (Alaska 1975); *Stewart & Grindle,*

*Inc. v. State,* 524 P.2d 1242, 1246 (Alaska 1974). When the court appropriates an attorney's labor, the court has prevented the attorney from selling that labor on the open market and has thus denied to the attorney the economic benefit of that labor. Finally, the taking is accomplished for a public use. Counsel is appointed not out of a desire to benefit any individual defendant, but to ensure that all defendants are treated equally before the law, that all defendants will receive a fair trial before an impartial tribunal. *See Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799, 805 (1963). Because the appointment thus benefits all persons equally, the cost of providing such representation must be equally borne rather than shunted to specific persons or specifically identified classes of persons.

We thus conclude that requiring an attorney to represent an indigent criminal defendant for only nominal compensation unfairly burdens the attorney by disproportionately placing the cost of a program intended to benefit the public upon the attorney rather than upon the citizenry as a whole. As such, the appropriation of the attorney's labor is a "taking" under the provisions of Alaska Constitution article I, section 18.

### IV

Having so decided, we are faced with determining the measure of the mandated compensation. In other contexts we have indicated that just compensation is measured by the fair market value of the property appropriated, or the "price in money that the property could be sold for on the open market under fair conditions between an owner willing to sell and a purchaser willing to buy with a reasonable time allowed to find a purchaser." *State v. 7.026 Acres,* 466 P.2d 364, 356 (Alaska 1970) (real property); *see also Stroh v. Alaska State Housing Authority,* 459 P.2d 480, 486 (Alaska 1969) (personal property). Thus, a determination of "market value" differs from "market price" in that "market value" includes elements of "intelligence," "knowledge" and "willingness" in ascertaining the actual worth of the property. Market price, on the other hand, indicates only the price which the property could command in an imperfect market. *Dash v. State,* 491 P.2d 1069, 1075 (Alaska 1971).

■ We see no reason for a different rule in the present action. We emphasize, however, that the measure of value will not necessarily reflect any specific attorney's normal rate of compensation, but rather will reflect the compensation received by the average competent attorney operating on the open market.[8]

### V

*Model Rule of Professional Conduct* 6.1 (1983) provides that:

> A lawyer should render public interest legal service. A lawyer may discharge this responsibility by providing professional services at no fee or a reduced fee to persons of limited means or to public service or charitable groups or organizations, by service in activities for improving the law, the legal system or the legal profession, and by financial support for organizations that provide legal services to persons of limited means.[9]

---

**8.** We need not at this time decide whether former Administrative Rule 12 provided "market value" compensation for DeLisio's services. Because another attorney was appointed to represent Ningeok, DeLisio performed no services meriting compensation.

**9.** There is no counterpart of Rule 6.1 in our state disciplinary code. Ethical consideration (EC) 2–25, however, states that "[t]he basic responsibility for providing legal services for those unable to pay ultimately rests upon the individual lawyer.... Every lawyer, regardless of professional prominence or professional workload, should find time to participate in serving the disadvantaged. The rendition of free legal services to those unable to pay reasonable fees continues to be an obligation of each lawyer...." EC 8–9 states that "[t]he advancement of our legal system is of vital importance in maintaining the rule of law and ... lawyers should encourage, and should aid in making, needed changes and improvements." EC 8–3 states that "[t]hose persons unable to pay for legal services should be provided needed services." *See also* Model Rule 6.2 ("A lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause.").

The Model Rules thus express a policy favoring public service and affirming the profession's ethical obligation to ensure representation of those in need. We cannot emphasize too strongly our support for this position. Attorneys *should* be willing to undertake pro bono representation. We applaud those attorneys who voluntarily accept this obligation and deeply regret that there are those who refuse to do so. Yet we are reluctantly persuaded that this ethical obligation, important as it is cannot justify the practice of compelled gratuitous representation.

Because of the disposition above, we need not consider Delisio's other arguments. To the extent that our holding today is inconsistent with our prior decisions, those decisions are overruled. The judgment of the trial court is REVERSED.

MATTHEWS, J., not participating.

RABINOWITZ, Chief Justice, dissenting.

I dissent from the majority's conclusion that *Jackson v. State*, 413 P.2d 488 (Alaska 1966), and *Wood v. Superior Court*, 690 P.2d 1225 (Alaska 1984), were erroneously decided. In my view, these precedents correctly held that an attorney appointed to represent an indigent defendant in a criminal prosecution has no constitutional right to receive compensation for his services except in very limited circumstances.

We identified the authority for imposing this obligation on attorneys in part in *Jackson* where we said:

> [T]he foundation of the assigned counsel system is a time-honored and traditional obligation of the bar to defend the indigent, without compensation, if called upon. However, it has not been the practice in Alaska to require counsel to serve without some compensation, even though the amount that is allowed is not comparable to what counsel would receive from a client able to pay.[1]

*Jackson*, 413 P.2d at 491 (footnote omitted).

In *Wood*, we reaffirmed the court's authority to appoint counsel to represent indigent defendants in criminal proceedings. In so holding we said:

> Wood first argues that courts do not have legal authority "to coerce one class of persons to involuntarily provide services to a second class of persons when no contractural [sic] or tortious relationship exists between them." We rejected a similar argument in *Jackson* and see no reason to reverse now. Lawyers have traditionally been responsible for representing indigent clients, and courts have traditionally supervised the terms and conditions of this representation.[2]

690 P.2d at 1228. We also reaffirmed the constitutionality of imposing the obligation on appointed attorneys to represent indigent criminal defendants without payment of full compensation, stating in part:

> Nor does an order requiring an attorney to represent a criminal defendant necessarily take the attorney's private property without just compensation. *Jackson*'s holding on this issue is consist-

---

1. In writing for the court in *Jackson*, Justice Dimond additionally explained that an attorney implicitly accepted this obligation, upon taking the oath of admission to the bar:

    The requirement of the attorneys' oath and Canon [of Professional Ethics] 4 reflect a tradition deeply rooted in the common law—that an attorney is an officer of the court assisting the court in the administration of justice, and that as such he has an obligation when called upon by the court to render his services for indigents in criminal cases without payment of a fee except as may be provided by statute or rule of court. This principle is so firmly established in the history of the courts and the legal profession that it may be said to be a condition under which lawyers are licensed to practice as officers of the court.... "[T]he

lawyer has consented to, and assumed, this obligation and when he is called upon to fulfill it, he cannot contend that it is a 'taking of his services.'"

413 P.2d at 490 (footnotes omitted) (in part) quoting *United States v. Dillon*, 346 F.2d 633, 635 (9th Cir.1965), *cert. denied*, 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966).

2. We responded to Wood's argument that courts do not have the power to issue orders appointing counsel to represent indigent criminal defendants by pointing out that article IV, section 15 of the Alaska Constitution gives us authority to make and promulgate "rules governing the administration of all courts" and "rules governing practice and procedure in civil and criminal cases in all courts." *See* 690 P.2d at 1228.

ent with the "vast majority" of federal and state courts decisions. *It may be that in some extreme cases an assignment would cripple an attorney's practice and thus rise to the level of a taking.* But Wood has not shown that this is an extreme case.

*Id.* at 1229 (citations omitted and emphasis added). We further amplified our position in holding that although "[a] court may require an attorney to represent an indigent defendant without compensation, ... requiring an attorney to pay defense *expenses* out of his or her pocket takes the attorney's private property." [3] *Id.* at 1230 (citations omitted and emphasis added).

I reject DeLisio's argument that "the traditional rationale for the system compel-

ling legal services for inadequate compensation is not viable." There unquestionably exists in this country a tradition of compulsory representation of indigent defendants without full compensation, a tradition which is reflected in numerous court decisions dating back to the mid–1800's.[4] Of perhaps greater significance is the fact that the court rules for the district courts of the Territory of Alaska embodied this tradition and the court rules adopted shortly after statehood continued it.[5] Specifically, the court rules in force before statehood allowed the trial judge, in his discretion, after the termination of the trial of a criminal case where an attorney was appointed to defend an indigent, to "make an allowance to such attorney as nominal compen-

**3.** We explained that

the cost of hiring a replacement attorney can justly be called an "expense" for which an incompetent attorney must be compensated, and we see nothing in the superior court's order or in the handling of this case to suggest that attorneys who ethically must hire replacements are in fact reimbursed for this kind of expense. If an attorney can demonstrate that he or she cannot ethically take a case to which he or she has been assigned, forcing that attorney to hire a replacement is unconstitutional.

Attorneys who can competently handle a case they are assigned are in a quite different position. If they arrange to hire a replacement ... the added expense of hiring a replacement should be borne by the attorney, not the taxpayers. We hold that if an attorney is competent to handle the criminal case to which he or she is assigned, the fact that the attorney hires replacement counsel does not convert the order assigning the attorney to the case into a taking.

*Id.* at 1231 (footnote omitted).

I find this holding dispositive of DeLisio's claim that the appointed attorney must be compensated for the usual costs and expenses incurred in defending an indigent accused.

**4.** The following jurisdictions have recognized, in the years noted parenthetically, the general rule that assigned counsel for an indigent defendant has no right to compensation by the public in the absence of a statute or court rule: Alabama (1873), Alaska (1966), Arkansas (1876), California (1860), Florida (1972), Georgia (1873), Illinois (1857), Kansas (1868), Kentucky (1946), Louisiana (1891), Michigan (1850), Mississippi (1881), Missouri (1869), Montana (1874), Nevada (1879), New Jersey (1961), New York (1879), North Carolina (1967), Pennsylvania (1879), Tennessee (1871), Utah (1911),

Washington (1892), West Virginia (1900). *See* Annotation, *Right of Attorney Appointed by Court for Indigent Accused to, and Court's Power to Award, Compensation by Public, in Absence of Statute or Court Rule,* 21 A.L.R.3d 819, 823–24 (1968 & Supp.1986); *United States v. Dillon,* 346 F.2d at 637; *Weiner v. Fulton County,* 113 Ga. App. 343, 148 S.E.2d 143, 146, *cert. denied,* 385 U.S. 958, 87 S.Ct. 393, 17 L.Ed.2d 304 (1966).

**5.** Rule 25(b), Amended Uniform Rules of the District Court for the District of Alaska (effective October 1, 1957), provided:

In any criminal case where the court shall appoint an attorney to defend a poor person who has neither money nor property wherewith to employ counsel, the judge may, in his discretion, after the termination of said trial, make an allowance to such attorney as *nominal compensation* for his services therein, to be paid out of Fund "C". Said allowance, unless otherwise ordered by the court or judge, shall be (1) in misdemeanor cases, $50.00; (2) in felony cases less than capital, $150.00; (3) in capital cases, $250.00.

[Emphasis added]. Former Administrative Rule 15 (adopted October 9, 1959) also provided:

(a) *Criminal.* Attorneys appointed by the court to represent indigent persons shall be paid for this service according to the following schedule:

(1) Representation on plea of guilty and sentencing—$75.00.

(2) Representation on plea of not guilty and trial—$75.00 for each day or fraction thereof spent in court.

(b) *Other.* Attorneys appointed by the court to represent indigent persons in situations other than as provided for in (a) shall be paid a fee established by the court, commensurate with the time and legal problems involved.

sation for his services...." *See* Rule 25(b), *supra* note 5, *quoted and explained in Jackson*, 413 P.2d at 491.

This tradition and practice suggest that the framers of our constitution contemplated that this court would have the rule-making authority, pursuant to article IV, section 15, to appoint attorneys to represent indigent defendants in criminal proceedings. Thus, I am not persuaded that we should disavow our rationales in *Jackson* and *Wood* that lawyers have traditionally been responsible for representing indigent criminal defendants and that courts have traditionally supervised the terms and conditions of appointed attorneys' representation of indigent defendants.

Nor am I persuaded by DeLisio's arguments that judicially compelled representation of an indigent without adequate compensation constitutes a taking of the appointed attorney's property in violation of the United States and Alaska Constitutions.[6] Essentially the same arguments which are now advanced by DeLisio were explicitly rejected in *Wood*, wherein we said simply that "an order requiring an attorney to represent a criminal defendant [does not] necessarily take that attorney's private property without just compensation," and noted that this holding was consistent with the "vast majority" of federal and state court decisions.[7] 690 P.2d at 1229; *see also* note 4, *supra*.

It bears repeating here that we have not failed to acknowledge that in some extreme cases an assignment would cripple an attorney's practice and thus rise to the level of a taking.[8] *Wood*, 690 P.2d at 1229. Our prior decisions recognize a constitutional violation where the appointment imposes upon an individual lawyer a unique hardship but none where the obligation to serve is equitably imposed upon all members of the bar.

It remains my view that the rationale of *Jackson* and *Wood* that the traditional obligation of attorneys to represent indigent defendants furnishes adequate justification for rejection of a claim of an unconstitutional taking like that made by DeLisio here. Of crucial significance is the pivotal role played by appointed counsel in fulfilling the obligation of Alaska's criminal justice system to accord indigent defendants their right to legal representation. I therefore dissent from the majority's holding that requiring an attorney to represent an indigent defendant for less than full compensation violates article I, section 18 of the Alaska Constitution.[9]

**6.** The "takings clause" of the fifth amendment to the United States Constitution provides: "... nor shall private property be taken for public use, without just compensation."

Article I, section 18 of the Alaska Constitution provides: "Private property shall not be taken or damaged for public use without just compensation." Similarly, article I, section 1 provides in part that "all persons have a natural right to ... the enjoyment of the rewards of their own industry."

**7.** In *Williamson v. Vardeman*, 674 F.2d 1211, 1214–15 (8th Cir.1982) (citations omitted), the court noted that:

The vast majority of federal and state courts which have addressed the due process issue have decided that requiring counsel to serve without compensation is not an unconstitutional taking of property without just compensation. These courts reason that compulsion

of service is not a taking because there is a preexisting duty to provide such service. The source of this duty is a lawyer's status as an officer of the court.

**8.** Like Wood, DeLisio has made no showing that taking the assignment in question here would have the consequences of crippling his practice.

Implicit in our recognition in *Wood* that in unusual circumstances an appointment could result in a taking in the constitutional sense is our rejection of both the notion that the practice of law is merely an unprotected privilege and the view that an attorney's services are personal services as distinguished from a protected property interest.

**9.** I concur in the majority's views that DeLisio has shown neither that he is incompetent to represent a criminal defendant nor that he was wrongfully denied a jury trial.